NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 10-1908

_____

FRANKLIN BENJAMIN, by and through his
next friend, Andree Yock; RICHARD GROGG;
FRANK EDGETT, by and through their next
friend, Joyce McCarthy; SYLVIA BALDWIN, by
and through her next friend Shirl Meyers;
ANTHONY BEARD, by and through his next
friend, Nicole Turman, on behalf of themselves
and all others similarly situated

v.

DEPARTMENT OF PUBLIC WELFARE OF THE
COMMONWEALTH OF PENNSYLVANIA;
SECRETARY OF PUBLIC WELFARE OF THE
COMMONWEALTH OF PENNSYLVANIA

CRAIG SPRINGSTEAD, by and through his
father and guardian, Bertin Springstead;
MARIA MEO, by and through her mother and
guardian, Grace Meo; DANIEL BASTEK, by and
through his father and guardian, John Bastek;
MICHAEL STORM, by and through his
guardian, Polly Spare; BETH ANN LAMBO, by
and through her father and guardian, Joseph
Lambo; RICHARD CLARKE, by and through his
father and guardian, Leonaed Clarke; RICHARD
KOHLER, by and through his sister and
guardian, Sara Fuller; MARIA KASHATUS, by
and through her father and guardian, Thomas Kashatus;
WILSON SHEPPARD, by and through his brother
and next friend, Alfred Sheppard,
                                        Appellants
(Pursuant to Fed. R. App. P. 12(a))
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil No. 1-09-cv-01182)
District Judge:  Hon. John E. Jones, III
_____

Argued February 7, 2011

BEFORE:  JORDAN, GREENAWAY, JR.,
and STAPLETON, *Circuit Judges*

(Opinion Filed: April 5, 2011)

_____

Owen H. Smith (Argued)
Sidley Austin
787 Seventh Avenue
New York, NY  10019
  and
John E. Riley
Vaira & Riley
1600 Market Street, Suite 2650
Philadelphia, PA  19103
  Attorneys for Appellants

Mark J. Murphy
Robert W. Meek (Argued)
Robin Resnick
Disability Rights Network of PA
1315 Walnut Street, Suite 500
Philadelphia, PA  19107
  and
Stephen F. Gold
1709 Benjamin Franklin Parkway – 2nd Floor
Philadelphia, PA  19103
  Attorneys for Appellees

Lesli C. Esposito (Argued)

DLA Piper
1650 Market Street, Suite 4900
Philadelphia, PA  19103
  Attorney for Amicus Curiae
  Voices of the Retarded, Inc.

Carl A. Solano (Argued)
Schnader Harrison Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA  19103
  Attorney for Amicus Curiae
  Diane Solano

Joseph A. Sullivan
Jeremy Heep
Pepper Hamilton
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
  and
Natalie Grill Einsig
Pepper Hamilton
100 Market Street, Suite 200
Harrisburg, PA  17108
  Attorneys for Amicus Curiae
  The Arc of Pennsylvania and
  Vision for Equality, Inc.

———————————————

OPINION OF THE COURT
———————————————

STAPLETON, *Circuit Judge*:

Appellants-Intervenors Springstead et al. seek to intervene in this class action

brought against Defendants Pennsylvania Department of Public Welfare ("DPW") and

Secretary of  Public Welfare to enforce rights the Plaintiffs-Appellees claim to have

under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-

12134, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.  We will

affirm the District Court's denial of permissive intervention and intervention of right.

## I.  Background

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), established that it is a

violation of the ADA, the RA, and their implementing regulations to force

developmentally disabled patients to reside in institutions when they are able and willing

to live in a manner more fully integrated into the community.  At the same time,

*Olmstead* and the regulations make clear that "community based treatment [cannot] be

imposed on patients who do not desire it."  *Id*. at 602 (citing 28 C.F.R. § 35.130(e)(1)

(1998) and 28 C.F.R. pt. 35, App. A, p. 450 (1998)).

Plaintiffs-Appellees Benjamin et al. ("Plaintiffs") are individuals with mental

retardation who reside in intermediate care facilities for persons with mental retardation

("ICFs/MR") operated by the DPW.  They contend that the DPW's failure to offer

community services to them and others similarly situated violates the integration

mandates of the ADA and RA.  Plaintiffs sought and secured certification of the

following class:

> All persons who: (1) currently or in the future will reside in
> one of Pennsylvania's state-operated intermediate care
> facilities for persons with mental retardation (ICFs/MR); (2)
> could reside in the community with appropriate services and
> supports; and (3) do not or would not oppose community
> placement.

A7.

Plaintiffs seek declaratory and injunctive relief.  They recognize that "*Olmstead* requires that patients eligible and desirous of community placement be discharged into community-based programs [only] if placement can be reasonably accommodated, taking into account the resources of the state and the needs of other persons in its care." *Frederick L. v. Dep't. of Pub. Welfare*, 422 F.3d 151, 156-57 (3d Cir. 2005) (citing *Olmstead*, 527 U.S. at 587).  Accordingly, by way of remedy, they seek an injunction directing the DPW, *inter alia*, (1) to maintain a "Planning List that consists of all state ICF/MR residents who have been identified as not opposed to discharge to community services," (2) to promptly place "on the Planning List the named Plaintiffs and any other state ICF/MR residents identified by the ICF/MR Facility Directors as having affirmatively expressed their desire to be discharged to the community," (3) to question "ICF/MR residents and/or their involved family or guardians" at least annually regarding their current preference in order to keep the Planning List current, and (4) beginning in fiscal year 2011-12, to "develop and implement a viable integration plan that provides community services to at least 100 individuals on the Planning List annually for each of the first three years" and for at least 75 individuals from that list thereafter until all on the list have been discharged.  A296-99.

The Springstead Intervenors ("Intervenors") are residents of Pennsylvania ICFs/MR who would decline community placement if it were offered to them.  They moved to intervene of right and permissively under Federal Rule of Civil Procedure 24. Intervenors alleged that they are de facto members of the certified class, that they have protectable interests jeopardized by this lawsuit, and that neither Plaintiffs nor the DPW

5

sufficiently represent their interests.  The District Court denied the motion to intervene of right or permissively, and Intervenors timely appealed.[1]

Following the filing of this appeal, the District Court entered summary judgment in favor of Plaintiffs on the liability issue.  The remedy issue remains before it.

## II.  Discussion

We Court review a district court's denial of permissive intervention and intervention of right for abuse of discretion but applies a more stringent standard to denials of intervention of right.  *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992).  We will reverse a district court's determination on a motion to intervene of right if the court "applied an improper legal standard or reached a decision that we are confident is incorrect."  *Id.*  (internal quotation marks and citation omitted).

### A.    Intervention of Right

Rule 24 provides:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
>> **(1)** is given an unconditional right to intervene by a federal statute; or
>> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[1] The District Court had jurisdiction to hear claims regarding civil rights deprivations under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343 (a)(4).  This Court has jurisdiction under 28 U.S.C. § 1291 over the District Court's final decision denying Appellants' motion to intervene. *McClune v. Shamah*, 593 F.2d 482, 485 (3d Cir. 1979) (order denying intervention is considered final and appealable).

Fed. R. Civ. P. 24(a).

A petitioner seeking to intervene of right "must establish that:  (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)).[2]  The claimed interest in the litigation must be one that "is specific [to those seeking to intervene], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought."  *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998).  "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote."  *Id.*

An intervenor's interest in the litigation need not be a legal one so long as the party "will be practically disadvantaged by the disposition of the action."  *Id.* at 970 (quoting 7C CHARLES ALLAN WRIGHT, ARTHUR MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1908, at 301 (1986) ("The central purpose of the 1966 amendment was to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view, [under the former rule], that intervention must be limited to those who would be legally bound as a matter of res judicata.")).  However, rather than merely showing some impact, "the

---

[2] The District Court found that the application to intervene was timely, and this issue has not been raised on appeal.

7

applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Harris*, 820 F.2d at 601 (citations omitted) (court should consider any "significant legal effect on the applicant's interest," such as "the *stare decisis* effect on the applicant's rights" and whether "the contractual rights of the applicant may be affected by a proposed remedy.").

Intervenors insist that their interest in remaining in their current institutional setting is clearly sufficient to warrant intervention. We agree with the District Court, however, that Intervenors' interest in maintaining their current form of care is not directly in jeopardy in this litigation. The current parties have deliberately defined the class and the relief sought so that Intervenors' right to choose institutional treatment would not be affected.

The District Court made its intent clear. The class it certified expressly excludes all current and future residents of ICFs/MR who oppose, or would at any relevant time in the future oppose, community placement.[3] It therefore excludes Intervenors, and they will not be personally bound by anything that is decided in this litigation. It follows that, if the DPW should threaten in the future to coerce them into leaving their current

---

[3] The Intervenors are critical of the class definition because they say it requires an inquiry into the mental state of class members. Whether that poses a problem for other purposes, it does not pose one in the context of the issues before us. It is sufficient for present purposes to hold that their current opposition to community placement currently excludes them from the class. If they hereafter are persuaded to drop that opposition, they will no longer be in a position to represent the interest they seek to defend here.

8

institutions, Intervenors would be free to file their own suit and litigate whether they have a legally enforceable right to remain in the institution where they currently reside.[4]

This does not end the matter, however.  Intervenors insist that even if they "are not current or putative class members, their interest is likely to be affected as a practical matter by the outcome of the lawsuit because the relief sought by Plaintiffs is likely to result in closure of ICFs/MR." Appellants' Br. at 28.  Intervenors do not suggest that there is a danger that any remedy afforded to Plaintiffs in this action will include a requirement that an ICF/MR be closed.  Rather, they fear that budget constraints will cause the DPW to allocate its resources in a different manner if it is required by this suit to satisfy its obligations under the ADA and that this may result in its closing one or more ICFs/MR.

While it is, of course, possible that providing additional community placements will occasion some reallocation of the limited resources of the DPW, it is not possible to determine at this point whether that reallocation will result in the closing of one or more ICFs/MR, and we decline to speculate on that matter.  It is sufficient to hold that any possible impact on Intervenors' interest in maintaining their current institutional care is not the kind of direct impact that gives rise to a right to intervene.  In virtually every suit successfully prosecuted against a governmental entity, the judgment will occasion some reallocation of limited public resources.  Every competitor for those limited resources has an interest that potentially may be adversely affected by that reallocation.  We have found

---

[4] We express no view as to whether they have such a legally enforceable right.  We assume, without deciding, that they do.

9

no case, however, suggesting that the interest of such a competitor justifies intervention in litigation addressing issues in which he or she has no other interest.  If such a competitor believes that he or she has an enforceable right for the services of the public entity, he or she may bring his or her own suit.

Where a party has an interest in property over which the court has taken jurisdiction, and the party has an interest in "being heard with respect to the disposition of [a particular] fund[,] . . . such an interest is sufficient to support an applicant's intervention as of right." *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995).  Here, the court has not taken control of DPW funds and Intervenors do not have a legal right to particular funds.  They may have a right to certain benefits from the state, but not a right to a particular fund.

In *Harris*, we held that a District Attorney lacked the right to intervene in a suit seeking a cap on the prison population where the DA argued such a ceiling would limit his ability to carry out his duties as a law enforcement officer.  820 F.2d at 601.  Because the DA did not administer the prison, and the consent decree placing a ceiling on the prison population would only tangentially affect his ability to prosecute, we held that he had no right to intervene.  *See Kleissler*, 157 U.S. at 969-70.  Similarly here, the relief sought by Plaintiffs - that the DPW offer a choice of community placement to ICF/MR patients who do not oppose such placement - will only tangentially affect the rights of

10

those who are opposed.  Intervenors therefore are not entitled to intervene as their interests will not be directly affected by the relief sought. [5]

## IV.

Because intervention of right is not available here, the District Court did not abuse its discretion in finding that Intervenors are also not entitled to permissive intervention. *See Brody*, 957 F.2d at 124 ("[I]f intervention of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention.").

## V.

For the foregoing reasons, we will affirm the District Court's denial of Intervenors' application to intervene permissively and of right.

---

[5] Because we conclude that Intervenors lack sufficient interest to intervene, we do not address their contention that the DPW is an inadequate representative.